**NORTON ROSE FULBRIGHT US LLP**

Peter A. Stokes
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Telephone:  (512) 536-5287
Facsimile:  (512) 536-4598

*Attorney for Defendants*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAUDEN BISEL,<br><br>Plaintiff,<br><br>v.<br><br><br>ACASTI PHARMA, INC., RODERICK CARTER, JAN D'ALVISE, JOHN CANAN, and DONALD OLDS,<br><br>Defendants. | No. 1:21-cv-06051-AKH |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' MOTION TO DISMISS</u>

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 2

THE SAC .............................................................................................................. 6

ARGUMENT .......................................................................................................... 7

I. PLAINTIFF FAILS TO PLEAD PARTICULARIZED (OR ANY) FACTS SHOWING A MATERIAL MISSTATEMENT OR ACTIONABLE OMISSION ................................................................................................ 7

    A. The Allegations Fail To Show a Materially Misleading Disclosure or Actionable Omission ............................................................. 8

    B. Plaintiff Alleges No Facts Showing the Omitted Information Was Material or that Acasti Had Any Affirmative Duty To Disclose The Information ............................................................................. 15

II. PLAINTIFF'S CLAIMS ARE BARRED BY THE PSLRA SAFE HARBOR, THE BESPEAKS CAUTION DOCTRINE, AND THE PROTECTIONS FOR STATEMENTS OF OPINION ....................................... 18

III. PLAINTIFF FAILS TO ALLEGE LOSS CAUSATION ................................... 22

IV. THE SECTION 20 "CONTROL PERSON" CLAIMS ALSO FAIL ................. 25

CONCLUSION ...................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Amarin Corp. PLC Secs. Litig.*,
   2021 WL 1171669 (D.N.J. Mar. 29, 2021)...........................................................................3, 4

*Arfa v. Mecox Lane Ltd.*,
   No. 10 Civ. 9053, 2012 WL 697155 (S.D.N.Y. Mar. 5, 2012) .............................................10

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)....................................................................................................25

*In re Bank of Am. Corp.*,
   757 F. Supp. 2d 260 (S.D.N.Y. 2010)...................................................................................19

*In re Barrick Gold Corp. Secs. Litig.*,
   341 F. Supp. 3d 358 (S.D.N.Y. 2018)...................................................................................19

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................................23

*In re Bemis Co. Secs. Litig.*,
   512 F. Supp. 3d 518 (S.D.N.Y. Jan. 12, 2021) .......................................................2, 11, 19, 20

*In re CheckFree Corp. Shareholders Litig.*,
   No. 3193-CC, 2007 Del. Ch. LEXIS 148 (Del. Ch. Nov. 1, 2007) .......................................16

*Dura Pharms. Inc. v. Broudo*,
   544 U.S. 336 (2005)................................................................................................................22

*In re E-House Secs. Litig.*,
   2021 WL 4461777 (S.D.N.Y. Sept. 29, 2021).........................................................19, 20, 21

*In re Fairway Group Holdings Corp. Secs. Litig.*,
   No. 14 Civ. 0950(LAK0(AJP), 2015 WL 4931357 (S.D.N.Y. Aug. 19, 2015) .....................20

*Gamboa v. Citizens, Inc.*,
   2018 WL 2107205 (W.D. Tex. May 7, 2018) ........................................................................22

*In re GeoPharma, Inc. Sec. Litig.*,
   411 F. Supp. 2d 434 (S.D.N.Y. 2006)....................................................................................21

*Glassman v. Wometco Cable TV, Inc.*,
   No. 7307, 1989 Del. Ch. LEXIS 1 (Del. Ch. Jan. 6, 1989) ..................................................16

*Glazer v. Formica Corp.*,
   964 F.2d 149 (2d Cir. 1992)...................................................................................................10

*Goldfinger v. Journal Communs. Inc.*,
   2015 WL 2189752 (E.D. Wisc. May 8, 2015).......................................................................16

*Golub v. Gigamon Inc.*,
  847 F. App'x 368 (9th Cir. 2021) ........................................................................21

*Gottlieb v. Willis*,
  2012 WL 5439274 (D. Minn. Nov. 7, 2012) ...............................................13, 16

*Grace v. Rosenstock*,
  228 F.3d 40 (2d Cir. 2000)..................................................................................22

*Gray v. Wesco Aircraft Holdings, Inc.*,
  454 F. Supp. 3d 366 (S.D.N.Y. 2020)............................................... *passim*

*Greenthal v. Joyce*,
  2016 WL 362312 (S.D. Tex. Jan. 29, 2016) .......................................................16

*In re Hardinge, Inc. Secs. Litig.*,
  696 F. Supp. 2d 309 (W.D.N.Y. 2010) ...............................................................10

*Heinze v. Tesco Corp.*,
  971 F.3d 475 (5th Cir. 2020) .........................................................9, 17, 19, 21

*Hoffman v. UBS-AG*,
  591 F. Supp. 2d 522 (S.D.N.Y. 2008).................................................................10

*Hysong v. Encore Energy Partners LP*,
  2011 WL 5509100 (D. Del. Nov. 10, 2011) ................................................9, 10

*IBEW Local 98 Pension Fund v. Central Vermont Public Service Corp.*,
  2012 WL 928402 (D. Vt. Mar. 19, 2012) .............................................................9

*Janbay v. Canadian Solar, Inc.*,
  2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) .....................................................23

*Johnson v. Sequans Communs. S.A.*,
  2013 WL 214297 (S.D.N.Y. Jan. 17, 2013) ........................................................20

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)................................................................................21

*Karp v. First Conn. Bancorp, Inc.*,
  535 F. Supp. 3d 458 (D. Md. 2021) ..............................................................17, 20

*Karp v. SI Financial Group*,
  2020 WL 1891629 (D. Conn. Apr. 16, 2020)........................................10, 11, 14, 22

*Katyle v. Penn Nat'l Gaming, Inc.*,
  637 F.3d 462 (4th Cir. 2011) ..............................................................................23

*In re Keryx Biopharmaceuticals, Inc.*,
  2014 WL 585658 (S.D.N.Y. Feb. 14, 2014)....................................................4, 13

*In re Keryx Biopharmaceuticals, Inc.*,
  454 F. Supp. 3d 407 (D. Del. 2020) ...........................................................13, 16, 21

*Kuebler v. Vectren Corp.*,
 13 F.4th 631 (7th Cir. 2021) ...............................................................................22

*Laborers' Local #231 Pension Fund v. PharMerica Corp.*,
 2019 WL 4645583 ................................................................................................14

*Lau v. Opera Ltd.*,
 527 F. Supp. 3d 537 (S.D.N.Y. 2021) .................................................................23

*In re Lear Corp. S'holder Litig.*,
 926 A.2d 94 (Del. Ch. 2007) ...............................................................................17

*Lefkowitz v. Synacor, Inc.*,
 2019 WL 4053956 (S.D.N.Y. Aug. 28, 2019) ....................................................18

*Lentell v. Merrill Lynch & Co. Inc.*,
 396 F.3d 161 (2d Cir. 2005) ................................................................................23

*Little Gem Life Scis. LLC v. Orphan Med., Inc.*,
 2007 WL 541677 (D. Minn. Feb. 16, 2007) .......................................................18

*Luo v. Sogou, Inc.*,
 465 F. Supp. 3d 393 (S.D.N.Y. 2020) .................................................................10

*Malon v. Franklin Fin. Corp*,
 No. 3:14CV671-HEH, 2014 WL 6791611 (E.D. Va. Dec. 2, 2014) ..............16, 17

*In re Marsh & McLennan Cos., Inc. Secs. Litig.*,
 536 F. Supp. 2d 313 (S.D.N.Y. 2007) ...................................................................8

*Matrixx Initiatives, Inc. v. Siracusano*,
 131 S. Ct. 1309 (2011) ...........................................................................................9

*Montanio v. Keurig Green Mountain, Inc.*,
 237 F. Supp. 3d 163 (D. Vt. 2017).............................................................9, 17, 18

*Montanio v. Keurig Green Mountain, Inc.*,
 276 F. Supp. 3d 212 (D. Vt. 2017).......................................................................11

*In re Morgan Stanley Information Fund Secs. Litig.*,
 592 F.3d 347 (2d Cir. 2010) ................................................................................13

*Mostaed v. Crawford*,
 2012 WL 3947978 (E.D. Va. Sept. 10, 2012).................................................14, 18

*In re Ness Technologies, Inc.*,
 2011 WL 3444573 (Del. Ch. Aug. 3, 2011) ........................................................14

*ODS Capital LLC v. JA Solar Holdings Co. Ltd.*,
 2020 WL 7028639 (S.D.N.Y. Nov. 30, 2020).....................................................23

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
 575 U.S. 175 (2015)..........................................................................................9, 21

iv

*In re Pattern Energy Group Inc. Secs. Litig.*,
   2021 WL 311257 (D. Del. Jan. 28, 2021)..................................................................9

*In re Paypal Holdings, Inc. S'holder Deriv. Litig.*,
   2018 WL 466527 (N.D. Cal. Jan. 18, 2018) ..........................................................9, 10

*Puddu v. 6D Global Technologies, Inc.*,
   239 F. Supp. 3d 694 (S.D.N.Y. 2017)..................................................................11

*In re Refco, Inc. Sec. Litig.*,
   503 F. Supp. 2d 611 (S.D.N.Y. 2007)..................................................................25

*Resnik v. Woertz*,
   774 F. Supp. 2d 614 (D. Del. 2011) ....................................................................24

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)..............................................................................12

*Sanders v. AVEO Pharm., Inc.*,
   No. 13-11157-DJC, 2015 WL 1276824 (D. Mass. Mar. 20, 2015) ........................21

*Singh v. Cigna*,
   918 F.3d 57 (2d Cir. 2019)................................................................................15

*Skeen v. Jo-Ann Stores, Inc.*,
   750 A.2d 1170 (Del. 2000) ..........................................................................16, 17

*Sodhi v. Gentium S.P.A.*,
   2015 WL 273724 (S.D.N.Y. Jan. 22, 2015) ........................................................16

*Stoneridge Inv. Partners LLC v. Scientific-Atlanta, Inc.*,
   552 U.S. 148 (2008)........................................................................................22

*Strugala v. Riggio*,
   817 F. Supp. 2d 378 (S.D.N.Y. 2011)..................................................................11

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016)..............................................................9, 11, 14, 21

*Trahan v. Interactive Intelligence Grp., Inc.*,
   308 F. Supp. 3d 977 (S.D. Ind. Mar. 28, 2018) ..............................16, 18, 19, 24,

*In re Trulia, Inc. S'holder Litig.*,,
   129 A.3d 884 (Del. Ch. 2016)............................................................................16

*TSC Indus., Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976)........................................................................................16

*Vardakas v. American DG Energy Inc.*,
   No. 17-cv-10247-LTS, 2018 WL 1141360 (D. Mass. Mar. 2, 2018)........................11

*In re Vivendi, S.A. Secs. Litig.*,
   838 F.3d 223 (2d Cir. 2016)................................................................................9

*Wilamowsky v. Take-Two Interactive Software, Inc.,*
   818 F. Supp. 2d 744 (S.D.N.Y. 2011) ................................................................... 24

**Rules and Statutes**

15 U.S.C. § 78n(a) ........................................................................................................... 8

15 U.S.C. § 78u-4(b)(4) ................................................................................................. 22

17 C.F.R. § 240.10b-5(b) ................................................................................................ 9

17 C.F.R. § 240.14a-9(a) ................................................................................................ 8

Defendants respectfully submit this memorandum of law in support of their motion to dismiss the Second Amended Complaint ("SAC") for failure to state a claim under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) and failure to meet the requirements of FRCP 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## PRELIMINARY STATEMENT

Despite two amended complaints, Plaintiff has failed to plead a valid Section 14(a) claim. It is well-settled that "pure omission" claims are not cognizable, and that omissions only give rise to liability when an omitted fact is required by a federal regulation or would render a company's affirmative statements materially misleading if not disclosed.[1]   The task for a Section 14(a) plaintiff is greater still when, as here, the challenged affirmative statements supposedly rendered misleading by the alleged omissions are forward-looking statements and statements of opinion.

This case fails on the pleadings.  Plaintiff alleges that Acasti Pharma Inc. ("Acasti") was required to include financial projections in its final Rule 424(b)(3) Prospectus filed on July 15, 2021 (the "Proxy," which is attached as Exhibit 1 to the Stokes Declaration) regarding Acasti's agreement to acquire Grace Therapeutics Inc. ("Grace") and to disclose "adjustments made [by Acasti management] to the [projections] before they approved the projections for use by their financial advisor to prepare a fairness opinion . . . ."  (SAC ¶ 4.)  But Plaintiff does not plead with specificity what the projections actually show, let alone offer well-pled facts showing how this information actually renders any specific affirmative statements misleading.  Nor does Plaintiff identify any SEC rule that requires companies to disclose financial projections in merger proxies. While Plaintiff primarily appears to argue that the "anticipated benefits of the transaction" section of the Proxy and the discounted cash flow ("DCF") analysis by Acasti's financial advisor would

---

[1] *See infra* footnote 5.

1

be misleading without the projections, Plaintiff pleads no specific facts showing that the projections actually conflict with the affirmative statements or render them misleading.

Further, the affirmative statements at issue are primarily (if not entirely) forward-looking statements accompanied by sober cautionary disclosures making clear that Grace was a high-risk early development-stage biotech company that may not ever get its drug candidates approved or generate any revenue. The PSLRA safe harbor – including its strict "actual knowledge" scienter requirement – and bespeaks caution doctrine bar any claims that the forward-looking statements are rendered misleading by the omitted projections. The challenged statements likewise are mostly if not entirely statements of opinion, which enjoy additional protections that Plaintiff has not overcome. Plaintiff also does not adequately plead causation. The SAC should thus be dismissed.

## BACKGROUND[2]

Acasti is a Québec-based biopharmaceutical company that has historically focused on the research, development and commercialization of prescription drugs using omega-3 fatty acids, delivered both as free fatty acids and bound-to-phospholipid esters derived from krill oil for the treatment of cardiometabolic diseases, specifically hypertriglyceridemia. (Ex. 1 to Stokes Decl. at 94.) The company is publicly traded, with common shares listed on the NASDAQ Capital Market and the TSX Venture Exchange under the symbol "ACST." (*Id.*; SAC ¶ 12.) The individual Defendants comprise Acasti's current Board of Directors. (SAC ¶¶ 13-16.)

---

[2] Defendants request that the Court consider (and judicially notice) the exhibits attached to the Stokes Declaration, which reflect SEC filings and public stock prices. *See In re Bemis Co. Secs. Litig.*, 512 F. Supp. 3d 518, 524 (S.D.N.Y. Jan. 12, 2021) (holding that in deciding Rule 12(b)(6) motion, district court may consider SEC filings, documents referenced in complaint, and documents known to plaintiffs at time suit was filed); *In re Amarin Corp. PLC Secs. Litig.*, 2021 WL 1171669, at *8 (D.N.J. Mar. 29, 2021) (considering public stock prices at Rule 12 stage).

Like other development-stage pharmaceutical companies, Acasti has expended significant cash developing new cutting-edge drug candidates, funding clinical trials, and navigating the difficult and highly uncertain path to regulatory approval and commercialization.[3]  Acasti's then-lead product candidate, CaPre, is an OM3 phospholipid therapeutic that was the subject of two completed Phase 3 clinical trials to evaluate the efficacy, safety, and tolerability of CaPre in patients with severe hypertriglyceridemia.  (Ex. 1 to Stokes Decl. at 94; SAC ¶ 19.)  The top-line results were announced on January 13, 2020 and August 31, 2020, respectively.  (Ex. 1 to Stokes Decl. at 94.)  Unfortunately, neither trial met its primary endpoint.  (*Id.*.)

Acasti's Board thereafter engaged in in-depth discussions about preserving shareholder value in the face of these disappointing results.  (Ex. 1 to Stokes Decl. at 94.)  On September 29, 2020, Acasti formally announced that it had commenced a process to explore and evaluate potential strategic alternatives and had retained Oppenheimer & Co., Inc. ("Oppenheimer") to serve as the Board's financial advisor in connection with that process.  (*Id.* at 96.)  Oppenheimer contacted 118 potential strategic partners, which led to 21 non-binding letters of intent.  (*Id.*)  After extensive follow-up communications, due diligence, and analysis, Acasti's Board selected four of the potential candidates to move forward to the next round of the strategic process.  (*Id.* at 97.)  The terms of their initial non-binding proposals are disclosed in the Proxy Disclosures.  (*See id.* at 97-98.)  Grace was not part of this initial semifinal group.  (*See id.* at 98.)

In January 2021, Grace entered the process and submitted an initial indication of interest for a reverse merger, which assigned a value of approximately $80 million to Acasti.  (*See id.*)  Acasti's Board thereafter decided to include Grace in the semifinal round. (*See id.* at 98-99.)  Grace

---

[3] *See In re Keryx Biopharmaceuticals, Inc.*, 2014 WL 585658, at * 1 (S.D.N.Y. Feb. 14, 2014) ("For every drug that succeeds, others do not.  Clinical trials are phased into stages: some drugs never make it past the first stage, others never make it past the second stage, and so on").

was then a privately-held, New Jersey-based emerging biopharmaceutical company focused on developing innovative drug delivery technologies for the treatment of rare and orphan diseases. (*See id.* at 18; SAC ¶ 20.)   Its product candidates included GTX-104, an IV formulation of nimodipine designed to treat Subarachnoid Hemorrhage, a rare brain disorder; GTX-102, an oral-mucosal betamethasone spray for the treatment of Ataxia Telangiectasia, an orphan pediatric complex genetic neurodegenerative disorder; and GTX-101, a topical bioadhesive bupivacaine spray for Postherpetic Neuralgia, a persistent condition that may follow a shingles infection and can cause debilitating pain. (*See* Ex. 1 at 165.)

After additional diligence and evaluation, Acasti's Board invited three companies, including Grace, to participate in the final round. (*See id.* at 99.)   During February 2021, Acasti entered into an exclusivity agreement with one of the other bidders ("Company C") to negotiate a potential transaction, but the parties were unable to reach agreement, including for cross-border tax structuring reasons. (*See id.* at 99-100; SAC ¶ 27.)   On February 19, after market conditions improved, Acasti instructed Oppenheimer to present non-binding acquisition proposals to each finalist. (*See* Ex. 1 to Stokes Decl. at 100; SAC ¶ 28.)   Grace was the only finalist to accept substantially all of the key material terms of Acasti's proposal. (*See* Ex. 1 to Stokes Decl. at 100; SAC ¶ 29.)   After comparing Grace's proposal to Company C's proposal (with the other finalist having immediately rejected Acasti's proposal), Acasti's Board decided to enter an exclusivity agreement with Grace and attempt to negotiate a definitive agreement. (*See id.*)

Following additional negotiations, communications, and diligence, as well as a financial analysis of the proposed deal terms by Oppenheimer, Acasti and Grace entered a definitive merger agreement on May 7, 2021. (*See id.* at 104; SAC ¶ 30.)   Pursuant to the merger agreement, Acasti's existing shareholders would own at least 55% of the combined company. (*See id.* at cover page;

4

SAC ¶ 29.)  Despite the extensive, months-long outreach that Oppenheimer conducted (and the fact that the company was publicly "in play" since its September 29, 2020 announcement that it was launching a strategic process), there is no allegation that any other party was willing to offer better terms than Grace, nor does Plaintiff allege any facts showing that Acasti was likely to perform better by remaining as a stand-alone entity.

Acasti filed the final version of the proxy at issue in this suit (the "Proxy") on July 15, 2021.  (*See* Ex. 1 to Stokes Decl.)  The Proxy spans more than 200 pages and contains extensive disclosures regarding Grace's business (*id.* at 165-98), the merger background, process, and negotiations (*id.* at 94-104), and the risks associated with the merger and Grace's business (*id.* at 33-66), plus Grace's historical financial statements for 2018, 2019, and 2020 (*id.* at F-1 to F-54) and pro forma financial statements for the current year (*id.* at 31, 158-59).  The Proxy also contains a full copy of the merger agreement (Annex A) and Oppenheimer's fairness opinion (Annex B).

On August 26, 2021, Acasti's shareholders approved the merger.  (*See* SAC ¶¶ 5, 34.)  To be consummated, the merger required an affirmative vote by the majority of the votes cast at the meeting, with representatives of at least 33 1/3% of shares required to be present for there to be a quorum.  (*See* Ex. 1 to Stokes Decl. at 8.)  While Plaintiff characterizes the outcome of the vote as "bizarre,"[4] Plaintiff does not dispute that the affirmative vote – in which ***more than 90% of votes cas**t were voted in favor of the merger – was sufficient to approve the merger under Acasti's governing documents and the corporate law of Québec (where Acasti is incorporated).

---

[4] *See* SAC ¶ 34 & footnote 1.  Plaintiff does not dispute that shareholders were appropriately advised regarding the quorum, the procedure for voting against the merger, and the consequence of not voting.  Shareholders who opposed the transaction were thus fully informed regarding how to register their opposition.  ***More than 90% of votes cast at the meeting were voted in favor of the merger.***  *See* Ex. 2 to Stokes Decl., Aug. 27, 2021 Form 8-K (Proposal 1).

## THE SAC

The SAC primarily asserts that Acasti was required to include "financial projections for Grace" in the Proxy.  (*See* SAC ¶¶ 4, 39-43.)  Plaintiff also speculates (inaccurately) that Acasti management "adjusted the Grace Management Projections upwards," and alleges that Acasti was required to disclose these purported "upward" adjustments.  (*See id.* ¶¶ 37, 4.)  The prior two complaints contained no allegation that the projections were adjusted "upward."  (*See* ECF No. 1 ¶ 40; ECF No. 10 ¶ 60)  On his third attempt, Plaintiff now claims that the adjustments must have been "upward" because pages 188-90 of the Proxy allegedly used an "overwhelmingly negative tone" in describing "the state of Grace's financial condition" (SAC ¶ 45), and because "Acasti quadrupled the total addressable market for GTX-101 from $400 million to $1.6 billion by expanding its target indication from Postherpetic Neuralgia ("PHN") to include *non-PHN* pain" (*id.* ¶¶ 46-47.)  But pages 188-190 of the Proxy – which set forth the well-known, common-sense risks of investing in an unproven early development-stage biotech company like Grace – are not inconsistent with the possibility that the company could one day become very successful if it received regulatory approval and market acceptance for its new treatments.  The Proxy contains a thorough description of Grace's development pipeline and the reasons why each drug candidate could be commercially successful (as well as appropriate cautionary disclosures about the significant and inherent risks of clinical trials and the regulatory approval process).  (*See* Ex. 1 at 165-78.)  Likewise, the mere fact that the Proxy lists an addressable market for GTX-101 of "$400 million for PHN pain and $1.2 billion for non-PHN pain" does not mean that Acasti "quadrupled" the potential addressable market.  (*See* Ex. 1 at 175.)  The $1.2 billion estimate is specifically attributed in the Proxy to an outside market research firm (Fletcher Spaght), not to Acasti management.  (*See id.*; *see also id.* at 174 (listing Fletcher Spaght-sourced chart showing

"[p]otential future market for non-PHN pain indications").)   Nothing in the Proxy supports Plaintiff's meritless assertion that Acasti management misleadingly increased Grace's own projections to justify a higher price.  Plaintiff pleads no facts showing a misleading statement.

The SAC moreover cites no SEC disclosure rule – and none exists – that requires that projections (or adjustments to projections) be disclosed in a merger proxy.  Acasti does not disclose such projections as a matter of course, nor do many development-stage life sciences companies, given the uncertainty of clinical trials and the FDA approval process.  Companies may lawfully choose not to disclose projections, which the Proxy disclosed were "inherently uncertain."  (*See* Ex. 1 to Stokes Decl. at 108.)   Further, the Proxy includes three years of audited historical financials for Grace, plus pro forma financials for 2021.  (*See id.* at 31, 158-59, and F-1 to F-54.)

Plaintiff also cites various alleged omissions of background information in the "Events Leading to the Merger" section of the SAC, including whether prior proposals from unsuccessful bidders discussed "the post-close governance structure and/or composition of the combined company board of directors" (SAC ¶ 24) and the means by which Grace became part of the bidding process (*id.* ¶ 25).  It does not appear that Plaintiff is asserting claims based on these alleged omissions, as they do not appear to be referenced in Section III (titled "The Proxy Made False and Misleading Statements Concerning Grace's Projections and Valuation") or Section IV (the purported causation section, which is mislabeled as Section III) of the SAC, which were devoted entirely to the projections.  Even if such a claim is deemed asserted, it still fails as set forth below.

## ARGUMENT

## I.   PLAINTIFF FAILS TO PLEAD PARTICULARIZED (OR ANY) FACTS SHOWING A MATERIAL MISSTATEMENT OR ACTIONABLE OMISSION

Section 14(a) proscribes soliciting a proxy "in contravention of such rules and regulations as the [SEC] may prescribe as necessary and appropriate in the public interest or for the protection

of investors."  15 U.S.C. § 78n(a).  Under SEC Rule 14a-9, no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9(a).

The language of Rule 14a-9 is virtually identical to that in Rule 10b-5(b), which prohibits companies from making "any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."  17 C.F.R. § 240.10b-5(b).  This case is subject to the PSLRA's heightened pleading requirements, as well as to Rule 9(b), as the allegations demonstrate that the claims sound in fraud.  (*See* SAC ¶ 71 (alleging that Defendants "***knew*** or were negligent in not knowing that the Proxy is materially misleading); *In re Marsh & McLennan Cos., Inc. Secs. Litig.*, 536 F. Supp. 2d 313, 320 (S.D.N.Y. 2007) (applying PSLRA to Section 14(a) claims based on statute's plain language, and applying Rule 9(b) to Section 14(a) claims that "sound in fraud").

### A.    The Allegations Fail To Show a Materially Misleading Disclosure or Actionable Omission

Unlike in Delaware, where plaintiffs can occasionally survive dismissal under a "pure omissions" theory, a federal Section 14(a) plaintiff must also show that the defendant's disclosures are affirmatively misleading, and not simply incomplete (even if the omitted information is

material or would be helpful to investors).[5]  This is consistent with caselaw interpreting similar

provisions under other federal securities laws.[6]

---

[5] *See In re Vivendi, S.A. Secs. Litig.*, 838 F.3d 223, 239-40 (2d Cir. 2016) (explaining that "pure omission" claims are not cognizable absent a duty to disclose); *Resnik v. Swartz*, 303 F;3d 147, 151 (2d Cir. 2002) ("Thus, omission of information from a proxy statement will violate [Section 14(a) and Rule 14a-9] if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading"; affirming dismissal); *Heinze v. Tesco Corp.*, 971 F.3d 475, 483 (5th Cir. 2020) (collecting cases and holding that "pure-omission claims are not cognizable" under Section 14(a)); *In re Pattern Energy Group Inc. Secs. Litig.*, 2021 WL 311257, (D. Del. Jan. 28, 2021) ("'[I]n order to plead facts to sufficiently allege . . . a section 14(a) claim, a plaintiff must identify a precise statement in the proxy that is either affirmatively misleading in and of itself, or is rendered misleading by operation of a materially omitted fact'") (quoting *Hysong v. Encore Energy Partners LP*, 2011 WL 5509100, at *6 (D. Del. Nov. 10, 2011)); *In re Paypal Holdings, Inc. S'holder Deriv. Litig.*, 2018 WL 466527, at *4 (N.D. Cal. Jan. 18, 2018) (holding that "incompleteness" is insufficient to allege a Section 14(a) claim); *Karp v. SI Financial Group*, 2020 WL 1891629, at *11 (D. Conn. Apr. 16, 2020) (dismissing Section 14(a) claim over failure to disclose projections where "[t]he Amended Complaint includes numerous allegations that speak to the usefulness of these metrics and their importance in informing a shareholder's voting decision—that is, their materiality—but no non-conclusory allegation that these omissions rendered any statement in the Proxy false or misleading. The plain language of Rule 14a-9 unambiguously requires that an omission render a statement in the Proxy misleading in order to trigger liability under the Rule"); *id.* at *13 ("While Plaintiffs' allegations may be sufficient under Delaware law, they are not sufficient under Section 14(a) and Rule 14a-9"); *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 401 (S.D.N.Y. 2020) (holding that Rule 14a-9 requires plaintiffs to show both materiality and a false or misleading statement as a result of the omission); *Montanio v. Keurig Green Mountain, Inc.*, 237 F. Supp. 3d 163, 178 (D. Vt. 2017) ("Merely asking for more detail or background regarding a particular decision is insufficient"); *IBEW Local 98 Pension Fund v. Central Vermont Public Service Corp.*, 2012 WL 928402, at *11 (D. Vt. Mar. 19, 2012) ( "Plaintiffs have identified what they characterize as material omissions, but they do not identify any statements in the Proxy Statement which are rendered false or misleading by virtue of those omissions"); *Hysong*, 2011 WL 5509100, at *7 ("[P]laintiff must identify a precise statement in the proxy that is either affirmatively misleading in and of itself, or is rendered misleading by operation of a materially omitted fact").

[6] *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 194 (2015) (holding that Section 11 of Securities Act "is not a general disclosure requirement; it affords a cause of action only when an issuer's failure to include a material fact has rendered a published statement misleading"); *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1321 (2011) ("Moreover, it bears emphasis that § 10(b) and Rule 10b-5 do not create an affirmative duty to disclose any and all material information.  Disclosure is required under these provisions only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading'") (quoting 17 C.F.R. § 240.10b-5(b)); *Tongue v. Sanofi*, 816 F.3d 199, 211-12 (2d Cir. 2016) (affirming dismissal of Section 11 claim where there was no "serious conflict"

Plaintiff fails to "identify a precise statement in the proxy that is either affirmatively misleading in and of itself, or is rendered misleading by operation of a materially omitted fact." *Hysong*, 2011 WL 5509100, at *7.  For starters, Plaintiff is wrong in suggesting that by simply mentioning a topic, a company is required to disclose all material information about that subject.[7] Instead, the challenged statements must "affirmatively create an impression that was materially different from the truth."  *Hoffman*, 591 F. Supp. 2d at 535; *see also Karp*, 2020 WL 1891629, at *13.  Plaintiff's assertion that Acasti was required to disclose the projections merely because they were referenced in the Proxy or cited as a basis for supporting the merger thus fails to state a claim.

Plaintiff also does not allege with specificity what the omitted information actually shows, let alone plead facts showing that the Proxy disclosures "affirmatively create an impression that was materially different from the truth."  Mere speculation that the projections or adjustments, if

---

between company's prediction and undisclosed FDA correspondence); *Glazer v. Formica Corp.*, 964 F.2d 149, 156-57 (2d Cir. 1992) (differentiating between materiality and duty to disclose); *Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 407 (S.D.N.Y. 2020) ("Absent a regulation affirmatively requiring disclosure," disclosure only required under Securities Act when omitted fact renders affirmative disclosure materially misleading).

[7] *See In re Paypal*, 2018 WL 466527, at *4 ("For a statement to be false or misleading, it 'must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists'" . . . .  In other words, 'it is not enough to allege that [a] statement is incomplete; rather, the plaintiff must state facts showing that, due to its incompleteness, the statement affirmatively led the plaintiff in the wrong direction (rather than merely omitted to discuss certain matters'") (quoting *Brody*, 280 F.3d at 1006)); *In re Hardinge, Inc. Secs. Litig.*, 696 F. Supp. 2d 309, 321 (W.D.N.Y. 2010) (collecting cases for proposition that disclosures that "do no more than convey the information which the Company recently sought to convey and whose accuracy plaintiff has not challenged" are not actionable despite alleged incompleteness); *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 535 (S.D.N.Y. 2008) (holding that Rule 10b-5's similar language "holds parties liable for misleading statements, not merely incomplete statements"); *In re Morgan Stanley Information Fund Secs. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010) ("The Offering Documents' disclosures did not trigger a generalized duty requiring defendants to disclose the entire corpus of their knowledge" or to disclose "commonly understood risks"); *Arfa v. Mecox Lane Ltd.*, No. 10 Civ. 9053, 2012 WL 697155, at *9-10 (S.D.N.Y. Mar. 5, 2012) (no Section 11 claim where plaintiff failed to identify omitted facts that were "not consistent with the disclosures" made by the company).

disclosed, would paint a different picture than what is conveyed in the Proxy (or mere speculation that the actual projections undercut the fairness opinion and the Board's recommendations) does not suffice under the PSLRA's particularized pleading requirements or Rule 9(b).[8]

Accordingly, Plaintiff's assertions that the omission of projections rendered affirmative statements misleading are unsupported by any well-pled (much less particularized) facts. As stated above, Plaintiff's conclusory and inaccurate speculation that Acasti management increased the projections provided by Grace management is unsupported by any statements in the Proxy or by any other well-pled fact. (*See supra* at 6-7.) The SAC alleges no facts showing that the actual projections, with or without adjustments, contradict the DCF range listed in the Proxy or would make the merger appear less fair if the projections were disclosed.

---

[8] *See Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (affirming dismissal under Rule 9(b) where "nothing in the complaint explains with adequate specificity how [the challenged statements] were actually false or misleading," *id.* at 173 (fact that company experienced some integration and payment problems did not show that statements were misleading); *Tongue*, 816 F.3d at 212 (no liability for failing to disclose interim FDA concerns where plaintiff did not plead "any serious conflict" between the FDA's concerns and the company's optimistic disclosures); *Vardakas v. American DG Energy Inc.*, No. 17-cv-10247-LTS, 2018 WL 1141360, at *5 (D. Mass. Mar. 2, 2018) (complaint must allege facts "suggesting that the undisclosed information . . . is **inconsistent with, or otherwise significantly differs from, the disclosed information**"; Again, May's allegation fails because May does not state how the omission made the Proxy false or how the omitted values were inconsistent with the summary presented in the Proxy") (emphasis added); *Montanio v. Keurig Green Mountain, Inc.*, 276 F. Supp. 3d 212 (D. Vt. 2017) ("It is insufficient to allege facts which merely suggest the possibility that the projection might be incorrect. The allegations **must identify with specificity the false data from which the defendant derived a misleading projection**") (emphasis added); *Puddu v. 6D Global Technologies, Inc.*, 239 F. Supp. 3d 694, 703-04 (S.D.N.Y. 2017) (dismissing Section 10(b) complaint where "[e]ven taking Plaintiffs' allegation that there was an omission as true, Plaintiffs **fail to 'show, beyond mere speculation,' that the facts allegedly omitted were actually true**") (emphasis added); *In re Bemis*, 512 F. Supp. 3d at 539 ("Importantly, Plaintiff does not point to any specific facts that Bemis failed to include as to the assumptions and methodologies underlying the Net Synergies that made the Proxy misleading. While Plaintiff contends that 'full transparency' in the Proxy was required . . . and that 'any' omission is therefore material, *id.* at 13-14, Plaintiff must allege more to state a claim"); *Strugala v. Riggio*, 817 F. Supp. 2d 378, 389 (S.D.N.Y. 2011) (dismissing derivative Section 14(a) claim and noting that "[h]ere, plaintiff merely speculates why defendants chose to omit information").

11

The Proxy's express disclosures, as well as common sense, also made clear that using projections or other numerical metrics to value a development-stage life sciences company like Grace is inherently imprecise.[9]  The Proxy disclosed that under the DCF analysis, Acasti's equity value "represents 14.17% to 58.95% of the combined company equity value," a very wide range that plainly conveys the significant uncertainty in using a DCF analysis to estimate the relative value of each company.  (*See* Ex. 1 to Stokes Decl. at 111.)  The other numerical valuation analyses that Oppenheimer employed resulted in similarly wide ranges.[10]  The Proxy also disclosed that "[t]he preparation of an opinion regarding fairness, from a financial point of view, is a complex analytic process" that requires "qualitative judgments" about numerous factors, and that "[t]he tables alone do not constitute a complete description of the financial analysis."  (*See id.* at 109.)  Plaintiff cannot plausibly say they were misled into believing that the Proxy's description of the DCF and the other financial analyses performed by Oppenheimer contained all information relating to the fairness analysis, or that the analysis was not "qualitative."

Plaintiff next alleges that the Board's recommendation in favor of the transaction was misleading because the Proxy cited Grace's "operating plans" and the Oppenheimer fairness opinion among multiple other reasons for its recommendation.  (*See* SAC ¶¶ 40(j), 40-43; Ex. 1 to Stokes Decl. at 104 (referencing "large range of factors").)  This claim fails for the same reasons,

---

[9] *See, e.g., In re Keryx Biopharmaceuticals, Inc.*, 454 F. Supp. 3d 407, 413-14 (D. Del. 2020) (holding that projections in proxy for development-stage biopharmaceutical company were not actionable statements of fact given cautionary statements); *In re Keryx*, 2014 WL 585658, at * 1 ("For every drug that succeeds, others do not"); Ex. 1 to Stokes Decl. at 108 (cautioning that forecasts used in DCF "were not prepared with the expectation of public disclosure," were "based on numerous variables and assumptions that are inherently uncertain," and were relied on by Oppenheimer "without independent verification or analysis"); B-3 ("We are not expressing any opinion as to the underlying valuation, future performance or long term viability of Acasti").

[10] *See* Ex. 1 to Stokes Decl. at 111 (noting range of "26.38% to 74.45%" based on Selected Public Company Analysis and "20.02% to 67.07%" based on the Selected Transactions Analysis).

as the allegations fail to show that the projections contradict this statement.  Acasti moreover was not required to disclose "the entire corpus" of information considered by the Board.  *See In re Morgan Stanley*, 592 F.3d at 366 ("The Offering Documents' disclosures did not trigger a generalized duty requiring defendants to disclose the entire corpus of their knowledge").

Plaintiff also assert that because the Proxy disclosed Acasti management adjusted the projections provided by Grace (as commonly occurs when a company receives projections from a potential transaction counterparty), Acasti was therefore required to disclose what the adjustments were.  (*See* SAC ¶¶ 43-46; Ex. 1 to Stokes Decl. at 107.)  Again, however, there is no duty to disclose projections in the first instance, much less "adjustments" to projections that were not disclosed.  *See Gottlieb*, 2012 WL 5439274, at *4 (declining to require "disclosure of financial projections and other additional information").  This is not a case where a company affirmatively disclosed a set of projections and held them out to be the most accurate edition, while concealing other more accurate projections that are identified with specificity in the complaint.  Acasti instead exercised its right not to disclose the projections and accurately recited that the projections were "adjusted."  (*See* Ex. 1 to Stokes Decl. at 107.)  The allegations fail again to show an affirmatively misleading statement.  *See Karp*, 2020 WL 1891629, at *11 ("The plain language of Rule 14a-9 unambiguously requires that an omission render a statement in the Proxy misleading. . . .").

Further, as stated above, Plaintiff's inaccurate assertions that the projections must have been adjusted "upward" by Acasti management are based entirely on conclusory speculation.  (*See supra* at 6-7.)  (In reality, the projections were reduced by Acasti management rather than increased, though the claims fail regardless of the direction of the adjustments.)  The fact the Proxy contained appropriate risk disclosures for an early-stage biotechnology company is not inconsistent with the possibility that the company could one day be highly profitable if it

successfully navigates the difficult and uncertain path towards regulatory approval and commercialization. Likewise, the fact that the Proxy lists a market research firm's conclusion that there was a potential $1.2 billion addressable market for "non-PHN pain" does not mean that Acasti management "quadrupled" the potential addressable market to justify higher projections. (*See supra* at 6-7; Ex. 1 at 175.) Plaintiff does not offer a single well-pled fact showing that the projections were artificially changed to make the transaction appear more favorable, let alone a single fact showing that the DCF range or any other statements in the Proxy actually conflict with any omitted projections. *See Tongue*, 816 F.3d at 211-12 (dismissal affirmed where no "serious conflict" shown between affirmative statement and undisclosed correspondence).

Additionally, while it is unclear whether Plaintiff is even asserting a claim based on the alleged failure to disclose details regarding prior unsuccessful proposals (SAC ¶¶ 25) and the means by which Grace became part of the bidding process (*id.* ¶ 26), any claims over these issues likewise fail. Plaintiff does not explain how they render any affirmative statements misleading. It is also well-settled that background information of this sort is not material.[11]

Plaintiff also wrongly contends the Proxy misled investors by containing the standard cautionary disclosure that "selecting portions of [Oppenheimer's] analysis" without considering "all analysis and factors or the full narrative description" and underlying methodologies and assumptions "could create a misleading or incomplete view of the process underlying" Oppenheimer's analyses and opinion. (SAC ¶ 57.) Far from showing a material misstatement, this disclosure simply cautions that focusing exclusively on portions of Oppenheimer's analysis

---

[11] *See Mostaed v. Crawford*, 2012 WL 3947978, at *9-10 (E.D. Va. Sept. 10, 2012) (no requirement for "'play-by-play' description of merger negotiations") (quoting *In re Ness Technologies, Inc.*, 2011 WL 3444573, at *4 (Del. Ch. Aug. 3, 2011)); *Laborers' Local #231 Pension Fund v. PharMerica Corp.*, 2019 WL 4645583, at *12 ( "A lack of specific detail, particularly given what otherwise appears to be a thorough explanation, is not material").

out of context with the entire analysis could potentially create an incomplete or misleading view of the process – a proposition that could be extended to virtually any exercise where a reader cherry-picks portions of any public disclosure document out of context.  Further, affirmatively disclosing the ***limitations*** of a public disclosure is the opposite of misleading investors and instead places the reader on notice regarding the uncertainty of the affirmative statements.  *Singh v. Cigna*, 918 F.3d 57, 64 (2d Cir. 2019) (rejecting claim where statements "seem to reflect Cigna's uncertainty" about maintaining adequate controls, rather than assuring that controls were sufficient); *In re Keryx*, 454 F. Supp. 3d at 413 (cautionary statements warning investors not to place undue reliance on forward-looking statements defeated claim).

For similar reasons, Plaintiff's meritless assertion that Acasti misled investors by stating it was "unable to predict when, if ever, we will generate revenue and material net cash inflows from the commercialization and sale of any of our product candidates" (SAC ¶¶ 43-44) fails to show falsity.  This statement simply conveys the well-known uncertainty an early development-stage company faces in predicting (before the completion of clinical trials or even preclinical work) whether and when its product candidates will be commercialized.  The fact that a company generates projections based on assumptions does not mean the company can "predict" with any certainty when or if commercialization will actually occur.  Plaintiff has again failed to show how any part of the Proxy was actually rendered affirmatively misleading without the projections, or that the actual projections paint a materially different picture than what is disclosed in the Proxy.

**B.**      **Plaintiff Alleges No Facts Showing the Omitted Information Was Material or that Acasti Had Any Affirmative Duty To Disclose The Information**

Plaintiff's claims would fail even if a claim of "incompleteness" sufficed under Section 14(a) (which it does not).  Federal courts have refused to import Delaware-style duties that companies must disclose financial projections, particularly when shareholders are not being asked

15

to give up their shares for cash.[12]  Federal courts likewise have refused to require disclosure of

other inputs and details regarding a fairness opinion.[13]  Plaintiff also fails to show that "there is a

substantial likelihood" the projections would "significantly alter the 'total mix' of information

made available" under the circumstances of this case.  *See In re Trulia, Inc. S'holder Litig.*, 129

A.3d 884, 898-99 (Del. Ch. 2016)); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)

(imposing same materiality rule for claims under federal securities laws that courts apply under

Delaware law).  Even under Delaware law, a company need not disclose every piece of information

a shareholder may need to conduct their own independent calculation of share value, and there is

no per se requirement to disclose projections in a stock-for-stock transaction.[14]

---

[12] *See Montanio*, 237 F. Supp. 3d at 175 (citing numerous cases for proposition that "financial projections . . . need not be disclosed"); *Karp v. First Conn. Bancorp, Inc.*, 535 F. Supp. 3d 458, 470-71 (D. Md. 2021) (rejecting claim based on failure to disclose cash flow projections in stock-for-stock merger); *Greenthal v. Joyce*, 2016 WL 362312, at *5 (S.D. Tex. Jan. 29, 2016) (distinguishing Delaware cases requiring disclosure of projections); *Assad*, 2017 WL 3129700, at *5 (rejecting injunction argument under Section 14(a) for failing to disclose financial projections); *Goldfinger v. Journal Communs. Inc.*, 2015 WL 2189752, at *4-5 (E.D. Wisc. May 8, 2015) ("There is no 'per se' duty to disclose financial projections given to and relied on by a financial advisor"); *Malon v. Franklin Fin. Corp*, No. 3:14CV671-HEH, 2014 WL 6791611, at *6 (E.D. Va. Dec. 2, 2014) (rejecting argument that company was required to disclose "projected unlevered free cash flows"); *Glassman v. Wometco Cable TV, Inc.*, No. 7307, 1989 Del. Ch. LEXIS 1, at *6-7 (Del. Ch. Jan. 6, 1989) (requiring disclosure of comparable transaction information under Delaware common law but emphasizing that court was applying "more extensive legal disclosure requirements" under Delaware law for freeze-out transactions); *Gottlieb v. Willis*, 2012 WL 5439274, at *5 (D. Minn. Nov. 7, 2012) (rejecting Section 14(a) injunction motion based on absence of projections).

[13] *See Trahan v. Interactive Intelligence Grp., Inc.*, 308 F. Supp. 3d 977, 996-98 (S.D. Ind. Mar. 28, 2018) (dismissing Section 14(a) claims over alleged failure to disclose additional details regarding banker's calculations); *Greenthal*, 2016 WL 362312, at *5 (rejecting argument that company has duty to disclose "key inputs" to valuation methodology); *Sodhi v. Gentium S.P.A.*, 2015 WL 273724, at *5-6 (S.D.N.Y. Jan. 22, 2015) (granting motion to dismiss in Section 14 case alleging failure to disclose "the inputs and assumptions employed by Jefferies").

[14] *See, e.g., Malon*, 2014 WL 6791611, at *6 (citing *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1173 (Del. 2000)) (rejecting argument that "stockholders should be given all the financial data they would need if they were making an independent determination of fair value"); *In re CheckFree Corp. Shareholders Litig.*, No. 3193-CC, 2007 Del. Ch. LEXIS 148, at *7-8 (Del. Ch.

Plaintiff has not pled materiality, let alone a duty to disclose or how the projections actually render an affirmative statement misleading.  This was not a cash-out sale of a company with existing products and a readily estimable future revenue stream, but an acquisition of an early development-stage company with no significant historical sales.  *See Montanio*, 237 F. Supp. 3d at 175 ("A reasonable shareholder would be unlikely to put much faith in the projections for a new product line"; further observing that "[t]en-year projections are generally speculative").  Acasti disclosed that the DCF analysis and other analyses employed by Oppenheimer yielded wide ranges of relative value between the two companies and listed the ranges, along with detailed disclosures regarding Grace's business (Ex. 1 to Stokes Decl. at 165-98), the merger background, process, and negotiations (*id.* at 94-104) and risks associated with the merger and Grace's business (*id.* at 33-66), plus Grace's historical financial statements for 2018, 2019, and 2020 (*id.* at F-1 to F-54) and pro forma financial statements for the current year (*id.* at 31, 158-59).  The DCF was just one of many analyses considered by Oppenheimer, and there is no allegation showing it was given significant weight by Acasti's Board in deciding to acquire Grace.  Plainly, the projections were treated by Oppenheimer and the Board as highly uncertain.  Plaintiff makes no allegation that the copious underlying disclosures regarding Grace's product candidates were inaccurate or insufficient to provide investors a meaningful opportunity to assess their prospects for approval.

Plaintiff thus pleads no facts showing that the projections would significantly alter the total mix of information under the circumstances here.  *See Heinze*, 971 F.3d at 482 (noting that caselaw "cautions against making the sorts of speculative predictions" demanded by plaintiff).  The

---

Nov. 1, 2007) (same; refusing to require disclosure of projections); *In re Lear Corp. S'holder Litig.,* 926 A.2d 94, 110-11 (Del. Ch. 2007) (rejecting claim that proxy should have disclosed earlier draft of DCF model run by investment advisor prior to fairness opinion).  "Omitted facts are not material simply because they might be helpful."  *Skeen*, 750 A.2d at 1174; *Malon*, 2014 WL 6791611, at *6.

additional requested background information about terms of prior unsuccessful bids, how Grace

and other participants first joined the process, and other background details sought by Plaintiff

likewise are not required even under Delaware law.  *See Mostaed*, 2012 WL 3947978, at *9-10

(holding that Delaware law does not require a "'play-by-play' of merger negotiations").

## II.   PLAINTIFF'S CLAIMS ARE BARRED BY THE PSLRA SAFE HARBOR, THE BESPEAKS CAUTION DOCTRINE, AND THE PROTECTIONS FOR STATEMENTS OF OPINION

Plaintiff's claims are also barred to the extent Plaintiff relies on forward-looking statements

or statements of opinion to fulfill Section 14(a)'s "affirmatively misleading statement"

requirement.  Plaintiff appears to rely primarily if not entirely on statements regarding the

"anticipated benefits" of the merger, the DCF, the Board's recommendation of the merger, and

other forward-looking statements and opinions as satisfying the "affirmatively misleading

statement" requirement for omissions liability, given the absence of any SEC rule or other basis

for a pure omission claim.  (*See* SAC ¶¶ 40-42, 53-59.)  Statements regarding anticipated future

benefits are forward-looking.[15]  A DCF analysis is based on anticipated future cash flows and is

thus likewise forward-looking.[16]  Acasti identified these as forward-looking statements.[17]  Plaintiff

---

[15] *See, e.g., Lefkowitz v. Synacor, Inc.*, 2019 WL 4053956, at *10 (S.D.N.Y. Aug. 28, 2019) ("The words 'anticipate' and 'expect' are common markers of forward looking statements").

[16] *See Trahan*, 308 F. Supp. 3d at 991, 997 (holding that DCF analysis was forward-looking because it was predicated on forward-looking projections); *Little Gem Life Scis. LLC v. Orphan Med., Inc.*, 2007 WL 541677, at *5 (D. Minn. Feb. 16, 2007) (same); *see also* Ex. 1 to Stokes Decl. at 111 (explaining that DCF is calculated based on "forecasted" future cash flows) and SAC ¶ 42 (alleging that DCF is "premised upon the company's future cash flows").

[17] *See* Ex. 1 to Stokes Decl. at ii (describing statements regarding "expectations" regarding future "results of operations or financial conditions" or using words like "anticipate" as forward-looking, including statements "regarding the proposed merger, the "benefits thereof," the impact on Acasti's cash balance, and "expectations after the merger"); *In re Barrick Gold Corp. Secs. Litig.*, 341 F. Supp. 3d 358, 376 (S.D.N.Y. 2018) ("A statement need not be specifically labeled as forward-looking or segregated into a separate section" to fall under safe harbor).

moreover admits that the claims are based on alleged misstatements about the combined company's "future" prospects and repeatedly uses the word "future" to describe the gravamen of their claims.   (*See* SAC ¶¶ 40(d), 42, 44, 51, 53(b).)   Likewise, Plaintiff uses the word "recommendation" regarding the Board's recommendation of the transaction, and the word "opinion" to describe Oppenheimer's fairness opinion, thus plainly signifying that both were opinions.  (*See id.* ¶¶ 4, 40(a), (b), (c), and (e), 41, 44, 45, 53(A), 71, 79; *In re Bank of Am. Corp.*, 757 F. Supp. 2d 260, 319 (S.D.N.Y. 2010) (noting that plaintiffs "do not dispute that the board's recommendation of the merger was a statement of opinion").   Plaintiff meets none of the requirements for stating a claim based on a forward-looking statement or opinion statement.[18]

*First*, the Proxy plainly includes "meaningful cautionary language," with more than 30 pages of detailed risk disclosures (*see, e.g.,* Ex. 1 to Stokes Decl. at ii-iii, 33-66) and express warnings that both merging companies must "conduct successful clinical development programs for their respective strategic product candidates and products and achieve regulatory approval" (*id.* at 40, 50), that regulatory approval may never be obtained (*id.* at 45, 50, 53, 54, ); that clinical testing "is expensive and can take many years to complete, and its outcome is inherently uncertain (*id.* at 51, 62, 64), that "[f]ailure can occur at any time during the clinical trial process (*id.* at 51), that delays could occur for numerous reasons (*id.* at 51), that their products "may not gain market acceptance" (*id.* 46), that they faced substantial competitive challenges (*id.* at 48), the "unproven,

---

[18] *See In re E-House Secs. Litig.*, 2021 WL 4461777, at *11 (S.D.N.Y. Sept. 29, 2021) (dismissing claim that forward-looking statements were misleading due to omission of other projections and explaining that statements qualify for safe harbor if they are *either* accompanied by meaningful cautionary language *or* are not made with actual knowledge of falsity; also applying standards for opinions); *In re Bemis*, 512 F. Supp. 3d at 531-33 (applying safe harbor to Section 14(a) claim); *Gray*, 454 F. Supp. 3d at 385-86 (same); *Trahan*, 308 F. Supp. 3d at 991, 997 (same); *Heinze*, 971 F.3d at 483-84 (same); *In re Bank of Am.*, 757 F. Supp. 2d at 319 (rejecting Section 14(a) claims based on merger recommendation).

development-stage nature of Grace's product candidates" (*id.* at 106), and numerous other specific

risk disclosures making clear that any attempt to value Grace's future prospects is highly uncertain.

The Proxy thus contained sufficient cautionary disclosures to preclude Plaintiff's claims.[19]

The common-law "bespeaks caution" doctrine similarly bars Plaintiff's claims.[20]

Plaintiff's assertion that the cautionary disclosure about not reading portions of

Oppenheimer's analysis out of context somehow demonstrates that Acasti was required to disclose

the projections (SAC ¶ 57) thus crumbles under its own weight.  If, as Plaintiff appears to contend,

this disclosure suggests that the descriptions could be misleading without reference to all

underlying factors, then investors were specifically told of that limitation.  *See In re Keryx*, 454 F.

Supp. 3d at 413 (cautionary statements warning investors not to place undue reliance on forward-

looking statements defeated claim).  Plaintiff even describes the "could create a misleading or

incomplete view" statement as an "explicit warning" to investors, thus confirming that investors

were told of the risk.  (SAC ¶ 57.)  Similarly, far from misleading investors, the statement that

Acasti was "unable to predict" when it would commercialize its products (*id.* ¶ 43) was a ***warning***

to investors not to place undue reliance on any projections or other forward-looking statements.

***Second,*** Plaintiff fails to allege particularized facts supporting a strong inference that

Defendants made the challenged disclosures with actual knowledge of their falsity.  *See Gray*, 454

F. Supp. 3d at 395-96 (discussing scienter requirement for forward-looking statements).  Courts

---

[19] *See In re E-House Secs. Litig.*, 2021 WL 4461777, at *11; *In re Bemis*, 512 F. Supp. 3d at 531-33; *Gray*, 454 F. Supp. 3d at 385-86.

[20] *See In re Fairway Group Holdings Corp. Secs. Litig.*, No. 14 Civ. 0950(LAK0(AJP), 2015 WL 4931357, at *13-14 (S.D.N.Y. Aug. 19, 2015) (granting motion to dismiss claim under "bespeaks caution" doctrine where forward-looking statements were "accompanied by meaningful cautionary language"); *Johnson v. Sequans Communs. S.A.*, 2013 WL 214297, at *9, *15 (S.D.N.Y. Jan. 17, 2013) (same).

have consistently refused to infer scienter where it is at least debatable that defendants were not required to disclose the information at issue, particularly when (as here) there are no particularized facts showing that any individual defendant personally had actual knowledge the disclosures were false (which they were not).[21]   The allegations do not support a strong inference of scienter.

*Third*, as evidenced by the numerous cautionary statements above, Acasti "ma[de] clear the real tentativeness of the opinions," further precluding liability.   *See Gray*, 454 F. Supp. 3d at 401 (quoting *Omnicare v. Laborers Dist. Council Construction Ind.*, 575 U.S. 175, 194 (2015)).

*Fourth,* Plaintiff fails to show that Defendants did not subjectively believe their opinions or that any undisclosed facts existed that created a "serious conflict" with Acasti's disclosures.[22]

Plaintiff's claims are thus barred.   The protections for forward-looking statements and opinions also swallow Plaintiff's omission claims, which again are not independently actionable absent their impact on a forward-looking or opinion statement.[23]

---

[21] *See Kalnit v. Eichler*, 264 F.3d 131, 143 (2d Cir. 2001) (claim fails where "the duty to disclose . . . was not so clear"); *Sanders v. AVEO Pharm., Inc.*, No. 13-11157-DJC, 2015 WL 1276824, at *10 (D. Mass. Mar. 20, 2015) (finding no strong inference of scienter when sufficiency of disclosures is "at least debatable") *In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 448 (S.D.N.Y. 2006) ("To infer scienter from an arguably material omission, in the face of allegations that cut against such an inference, and in the absence of valid motive allegations, would be to expand the anti-fraud provisions of the securities laws beyond their intended scope"); *Gamboa v. Citizens, Inc.*, , 2018 WL 2107205, at *3 (W.D. Tex. May 7, 2018) (explaining plaintiff "must show more than that it is debatable whether the disclosures were adequate").

[22] *See Tongue*, 816 F.3d at 211-12 (affirming dismissal of Section 11 claim where there was no "serious conflict" between company's prediction and undisclosed FDA correspondence); *Gray*, 454 F. Supp. 3d at 398 (plaintiffs failed to show that omitted information "'conflicted with any reasonable interpretation'" of the challenged statements); *Omnicare*, 575 U.S. at 194 ("The investor must identify particular (and material) facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context. . . .   This is no small task for an investor").

[23] *See In re E-House*, 2021 WL 4461777, at *12 (dismissing claim that forward-looking statements were misleading due to omission of other projections); *Golub v. Gigamon Inc.*, 847 F. App'x 368, 373 (9th Cir. 2021) (dismissing claims where statements allegedly rendered misleading by omissions were forward-looking); *Heinze*, 971 F.3d at 483-84 (explaining that "[b]ecause pure-

### III.   <u>PLAINTIFF FAILS TO ALLEGE LOSS CAUSATION</u>

The SAC likewise does not sufficiently allege causation.   "[B]oth loss causation and transaction causation must be proven" in Section 14(a) cases.   *Grace v. Rosenstock*, 228 F.3d 40, 47 (2d Cir. 2000).   Relying on *Grace*, the Seventh Circuit recently held that a Section 14(a) plaintiff must do more than show that the proxy itself was an "essential link" to the transaction, but must also show economic loss and proximate causation.   *Kuebler v. Vectren Corp.*, 13 F.4th 631, 645-46 (7th Cir. 2021).   The PSLRA's plain language requires that the specific "act or omission" alleged to violate the Exchange Act must cause the alleged loss, not merely that the proxy itself be an essential link to the merger.   15 U.S.C. § 78u-4(b)(4); *Stoneridge Inv. Partners LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 165 (2008) (explaining that the PSLRA "imposed ... a loss causation requirement upon 'any private action' arising from the [1934 Act]").   Courts in this circuit have similarly framed the "essential link" requirement as separate from the "causation" requirement, such that the alleged "misrepresentation or omission" must be shown to have "caused" the injury.   *See Gray*, 454 F. Supp. 3d at 384 (holding that Section 14(a) plaintiff must allege facts showing that "(1) the Proxy contained a material misrepresentation or omission, which (2) caused his injury, and (3) that the Proxy itself, rather than the particular defect in the solicitation materials, was an essential link in accomplishing the merger").

Plaintiff's barebones assertion that the stock price fell during the weeks following the merger does not show that the purported misstatements and omissions caused the drop.   *See Dura Pharms. Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (defining loss causation as the "causal

---

omission claims are not actionable, it would not make sense to have a safe harbor for omissions," but applying safe harbor to statements allegedly rendered misleading by omissions); *see also Karp*, 2020 WL 1891629, at \*11-12 (emphasizing that omissions are not independently actionable under Section 14(a) unless they are required by rule or render an affirmative statement misleading); *Resnik*, 303 F.3d at 150 (same).

connection between the material misrepresentation and the loss").  Mere allegations of correlation do not plausibly plead causation.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007) (allegations of parallel conduct insufficient to plead conspiracy).  Indeed, there is no specific (or even conclusory) allegation that Acasti's shareholders would have voted differently on the merger if the projections had been disclosed, or that the stock would have traded higher than it did but for the alleged omissions.  Plaintiff does not allege facts showing that the projections were inconsistent with the Proxy's other disclosures or were likely to change the outcome of the vote.  Nothing is pled to show that the alleged omissions caused Acasti's stock price to fall.[24]

Indeed, Plaintiff's allegations contradict such an inference.  Plaintiff asserts that "no other negative news or events regarding the companies has occurred" during the time period after the Merger.  (SAC ¶ 62.)  Plaintiff thus admits there was no "corrective disclosure" showing that the combined company missed any projections, or that Acasti announced any other negative news regarding Grace's anticipated future performance that contradicted anything in the Proxy.  How then could the projections (or their omission, or any other purported misstatements of Grace's value or prospects) be the cause of the decline?  *See Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 559-60 (S.D.N.Y. 2021) (holding that already-public information cannot be "corrective" for purposes of alleging loss causation if no new news is announced).  The allegations fail to show that the subsequent drop in stock price had anything to do with the alleged deficiencies in the Proxy.

---

[24] *See Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 175 (2d Cir. 2005) ("[T]o plead loss causation, the complaints must allege facts that support an inference that [the challenged] misstatements and omissions concealed the circumstances that bear upon the loss suffered such that plaintiffs would have been spared all or an ascertainable portion of that loss absent the fraud"); *ODS Capital LLC v. JA Solar Holdings Co. Ltd.*, 2020 WL 7028639, at *15 (S.D.N.Y. Nov. 30, 2020) (granting dismissal for failure to plead loss causation and rejecting mere "'speculation and conjecture'") (quoting *Janbay v. Canadian Solar, Inc*., 2012 WL 1080306, at *16 (S.D.N.Y. Mar. 30, 2012) (quoting *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 477 (4th Cir. 2011)).

Plaintiff moreover pleads an alternative potential cause of the initial stock price drop: the announcement of a "reverse stock split" that was approved by the Board at the same time the completion of the merger was announced.  (*See* SAC ¶ 35; *see also* Ex. 2 (Aug. 27, 2021 Form 8-K announcing "Reverse Stock Split ratio at 1-8" and listing advisory vote on potential stock split "[i]f necessary to regain compliance with NASDAQ's minimum bid price rules" as Proposal 8.) The stock chart shows that the steepest portion of the price drop reflected in paragraph 62 of the SAC occurred in close proximity to the reverse stock split, which was effectuated on August 31. (*See* Ex. 3 to Stokes Decl., Stock Price Chart.)  Plaintiff makes no attempt to disaggregate the impact of this news – or any other general economic news – from the merger announcement.  *See Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744, 757 (S.D.N.Y. 2011) (rejecting "no need to disaggregate losses" argument as incompatible with *Iqbal/Twombly*).  The NASDAQ US Small Cap Biotechnology Index also experienced significant deterioration during this time, declining from 5,627.44 on September 1, 2022, to 3,496.24 on February 4, 2022,[25] which further undercuts the plausibility of Plaintiff's loss causation allegations.   Other courts have dismissed Section 14(a) claims on causation grounds.[26]  The allegations do not even show that the merger itself (let alone the alleged misstatements and omissions) caused the stock price to decline.

---

[25] *See* Ex. 4 to Stokes Decl., NASDAQ US Small Cap Biotechnology Index chart; Ex. 5 (graph showing Acasti and index as green and blue lines, respectively, which reflects similar movements after initial steeper post-stock-split Acasti decline).   Public securities prices are judicially noticeable and may be considered on a motion to dismiss.  *See In re Amarin Corp. PLC Secs. Litig.*, 2021 WL 1171669, at *8 (D.N.J. Mar. 29, 2021).

[26] *See Gray*, 454 F. Supp. 3d at 404 ("conclusory assertion" that plaintiff's shares "were worth significantly more than the Merger Consideration" fails to plead loss causation in Section 14(a) case); *Resnik v. Woertz*, 774 F. Supp. 2d 614, 632 (D. Del. 2011) (holding that bare allegations that misstatements will deprive a plaintiff of the "right to a fully informed stockholder vote" are "insufficient to meet the loss causation requirement");  *Trahan*, 308 F. Supp. 3d at 1000 ("Trahan has alleged no more than a speculative possibility that he was economically injured by any misrepresentation in connection with the Merger.  And that is not enough.").

## IV. THE SECTION 20 "CONTROL PERSON" CLAIMS ALSO FAIL

Having failed to plead a primary liability claim or to offer specific allegations showing "culpable participation" by the individual Defendants, the control person claims fail.[27]

## CONCLUSION

Defendants thus request that the SAC be dismissed with prejudice.

Dated:  February 22, 2022

NORTON ROSE FULBRIGHT US LLP

*/s/ Peter A. Stokes*

Peter A. Stokes
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Telephone:  (512) 536-5287
Facsimile:  (512) 536-4598

*Attorneys for Defendants*

---

[27] *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).  *See In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 661 (S.D.N.Y. 2007) (discussing culpable participation requirement).